

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-11-00771-CR

Rene Daniel **VILLARREAL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 49th Judicial District Court, Zapata County, Texas
Trial Court No. 2111
Honorable Mark R. Luitjen,[1] Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Phylis J. Speedlin, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  December 5, 2012

REVERSED AND REMANDED

Rene Daniel Villarreal appeals his conviction for murder, arguing that he was egregiously

harmed by jury charge error.  We reverse the judgment of the trial court and remand the cause to

the trial court for a new trial.

### BACKGROUND

Around 11:30 p.m. on September 16, 2010, Zapata County Deputy Sheriff Ricardo Garza

responded to a call at 605 Miraflores Street.  Garza could see that a party was going on next door

---

[1] Sitting by assignment.

at 609 Miraflores Street. Garza was in his patrol car when he saw Chris Martinez running toward him. Martinez was not wearing a shirt, and as he got closer, Garza noticed that he was bleeding in the chest area. The situation quickly became chaotic, with many people running toward the patrol car. Martinez collapsed in front of the patrol car, and was transported by ambulance to the hospital, where he was pronounced dead from multiple stab wounds.

Gonzalo Garza was one of the people attending the party at Mahira Garcilazo's house at 609 Miraflores on the evening of September 16, 2010. Gonzalo stated that he drank one beer that night, and that he did not see any drugs in the house. Gonzalo saw Rene Villarreal arrive at the party. Initially, the party-goers were friendly toward each other, but then Villarreal and his friend Travis Sweet began "throwing gang signs," saying that "Texas Syndicate runs this house." Gonzalo attempted to calm the two men down, but Villarreal tried to hit him in the face. Gonzalo hit Villarreal, and then Travis threw a beer can at Gonzalo, hitting him in the chest. Mahira eventually asked Gonzalo to leave the party, and he left at 11:00 or 12:00. Gonzalo never saw Martinez being aggressive or in possession of a knife that night.

Dolores Oropeza testified that she went to a party at Mahira's house with Martinez, Travis Sweet, Rosario Jaime, and Zaira Villarreal[2] on the night of September 16, 2010. About five minutes after Gonzalo left the party, Dolores saw Martinez and Villarreal arguing. They exchanged words and hit each other. Martinez took his shirt off, and Villarreal said in Spanish, "this guy thinks that he's well-built, or what." Dolores then saw Villarreal stab Martinez with a silver knife three or four times. Martinez then ran toward a police car, and Villarreal ran behind the house. Dolores identified State's Exhibit 1, a butterfly knife, as belonging to Zaira. She stated that Zaira always carried the knife in her purse.

---

[2] The record does not disclose whether Zaira Villarreal is related to the appellant.

On cross-examination, Dolores admitted that she gave two statements to police. In the first statement, she did not mention anyone getting stabbed or seeing anyone with a knife, only that she remembered seeing Martinez take his shirt off. She further admitted that she was under the influence of alcohol and drugs while at the party.

Mario Esquivel, Mahira Garcilazo's brother, was also at the party the night Martinez was stabbed. He stated that Villarreal was already drunk and under the influence of drugs when he arrived at the party. Villarreal was acting crazy and stupid. After arguing with Gonzalo, Villarreal started an argument with Martinez. Mario stated that Martinez wanted to leave, and that he was not acting aggressively. Martinez took his shirt off and started to leave. Mario was walking Martinez out when Villarreal started stabbing Martinez. Mario stated that Villarreal stabbed Martinez about four times using the knife that was admitted at trial as State's Exhibit 1. Mario grabbed Villarreal, who also tried to hit him with the knife, but missed. Villarreal then ran to the back of the house. Mario never saw Martinez with a knife. Mario did see Zaira give a knife to Travis, who gave it to Villarreal right before the stabbing. Mario testified that he was neither drinking nor taking drugs the night of the party, because he had just had surgery. In his statement to the authorities after the stabbing, Mario did not mention a silver knife, and in fact, stated that he did not see the murder weapon.

Travis Sweet was also at the party at Mahira's house where people were drinking and playing pool. He testified that he gave Villarreal a pocket knife about 30 to 45 minutes before Villarreal began arguing with Gonzalo because Villarreal had asked him for a "piece of steel." Travis stated that he got the knife from Zaira, who was also at the party that night. Travis later saw Villarreal and Martinez fighting. Travis saw Villarreal try to hit Martinez. Martinez then took off his shirt. Villarreal said to Martinez, "what do you think you are, well-built?" Travis

stated that "that's when the action happened." Travis did not see how many times Villarreal stabbed Martinez, but thought it was more than once. Travis became scared, and ran from the house, jumping a fence and cutting his finger. The next morning, Travis was questioned by police, and provided a statement in which he said that Martinez had a knife in his hand when arguing with Villarreal, and that he, Travis, tried to separate the two men, and his finger was cut as a result. About two weeks later, after being arrested for driving without a license, Travis changed his statement. At trial, Travis called his first statement the "wrong statement." He explained that at the time he gave the first statement, he was high "on pills."

Zaira Villarreal testified that she went to a party at Mahira's house with Martinez, who was her roommate, Travis Sweet, Rosario Jaime, and Dolores Oropeza on the night of September 16, 2010. Zaira denied giving her butterfly knife to Travis that night, and stated she carried the knife in her purse, which she left in the car when she went inside Mahira's house. Zaira identified the knife admitted as State's Exhibit 1 as belonging to her.

Sheriff's Deputy Mike Alvarez responded to a call at 609 Miraflores made by Deputy Garza. Bystanders indicated that the suspect had fled behind the house, and Alvarez eventually located Villarreal in a brushy area two to three blocks from Miraflores. Alvarez described Villarreal as aggressive toward the authorities.

Investigator Juan Gonzalez testified that he located the knife used in the stabbing on the porch next to the driveway of Mahira's house. The knife had some blood on it. Gonzalez identified State's Exhibit 1 as the murder weapon. Gonzalez interviewed Villarreal about two hours after he was apprehended. Villarreal made a statement, which was videorecorded and transcribed. The recording was played for the jury. In the statement, Villarreal states that Martinez was "boasting" and challenging people to a fight, and that he—Villarreal—refused to

back down, even though Martinez was better built than he was. He claimed that Martinez first tried to stab him with a sharp piece of metal, but he blocked it with his hand, resulting in a cut on his hand. Villarreal then grabbed the metal from Martinez and struck him once before fleeing. Villarreal stated that had he not blocked the sharp piece of metal wielded by Martinez, "[Martinez] would [have] cut me in my belly." About thirty minutes later, Gonzalez conducted a second interview with Villarreal and Villarreal made a second statement, which was substantially similar to the first, although Villarreal added that Martinez "charged at" him with the sharp piece of metal and further stated that "the dude would have killed me." Villarreal was arrested on murder charges later that day. Two days later, Gonzalez photographed the cut on Villarreal's hand. Through his investigation, Gonzalez learned that the knife used in the stabbing belonged to Zaira Villarreal.

Medical examiner Corinne Stern, who performed the autopsy, testified that Martinez died from multiple stab wounds. She observed six stab wounds located on the chest, abdomen, and forearms. The wounds were consistent with the blade on the knife that was admitted as State's Exhibit 1. The toxicology report indicated that Martinez had alcohol and marijuana in his system when he died. Stern was shown a photograph of Villarreal's hand taken two days after his arrest. Stern opined that the cut on Villarreal's hand was not caused by a knife because the laceration was jagged and irregular.

Villarreal was charged with murder, and proceeded to a jury trial at which he raised self-defense. The jury rejected Villarreal's theory of self-defense and found Villarreal guilty of murder as charged in the indictment.[3] *See* TEX. PENAL CODE ANN. § 19.02(b)(2) (West 2011).

---

[3] Although the caption of the indictment and the judgment recite that Villarreal was charged and convicted under section 19.02(b)(1) of the Penal Code, the language in the body of the indictment controls. *See Jackson v. State*, 880 S.W.2d 432, 433-34 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). Here, the body of the indictment reads that, " . . . [O]n or about the 16th day of SEPTEMBER, 2010 A.D. . . . RENE DANIEL VILLARREAL, did then and

During punishment, the jury made a negative finding on the special issue of whether Villarreal acted under the immediate influence of sudden passion arising from an adequate cause, and recommended that Villarreal be sentenced to a term of 99 years of imprisonment; the trial court sentenced Villarreal accordingly. *Id*. § 19.02(d). Villarreal timely appealed.

**DISCUSSION**

In nine issues, Villarreal challenges the trial court's judgment, arguing that he was harmed by jury charge error and ineffective assistance of counsel.

### *Charge Error*

In his first five issues, Villarreal argues that the trial court committed jury charge error that egregiously harmed him. We review claims of jury charge error under the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). We first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error exists, we then evaluate the harm caused by the error. *Id.* The degree of harm required for reversal depends on whether that error was preserved in the trial court. *Id.* When, as here, error was not preserved in the trial court by timely objection, unobjected-to charge error requires reversal only if it resulted in "egregious harm." *Id.* at 743-44. "Harm is egregious if it deprives the appellant of a 'fair and impartial trial.'" *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).

The trial court is required to give the jury "a written charge distinctly setting forth the law applicable to the case . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The purpose of the jury charge is to instruct the jury on the law that applies to the case and to guide the jury in

---

there, with intent to cause serious bodily injury to an individual, namely, CHRISTOPHER LOUIS MARTINEZ, commit an act clearly dangerous to human life that caused the death of said CHRISTOPHER LOUIS MARTINEZ, by stabbing him in the body with a knife[.]" *See* TEX. PENAL CODE ANN. § 19.02(b)(2). Likewise, the charge instructed the jury in accordance with section 19.02(b)(2).

applying the law to the facts of the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996); *Caldwell v. State*, 971 S.W.2d 663, 666 (Tex. App.—Dallas 1998, pet. ref'd) (citing *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995)). The abstract or definitional portions of the charge help the jury to understand the meaning of concepts and terms used in the application paragraphs of the charge. *Caldwell*, 971 S.W.2d at 666 (citing *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)). As the court of criminal appeals has explained, a jury charge is adequate:

> if it either contains an application paragraph specifying all of the conditions to be met before a conviction under such theory is authorized, or contains an application paragraph authorizing a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers, or contains some logically consistent combination of such paragraphs.

*Plata*, 926 S.W.2d at 304.

### *Presumption of Reasonableness*

We first address Villarreal's argument that the trial court erred in failing to give a "presumption of reasonableness" instruction. The self-defense statute provides that a defendant is justified in using deadly force if, among other things, the actor "reasonably believes the deadly force is immediately necessary . . . to protect [himself] against the other's use or attempted use of unlawful deadly force." TEX. PENAL CODE ANN. § 9.32(a) (West 2011). Villarreal argues that the 2007 amendment to section 9.32 of the Penal Code mandates that the jury presume that the use of deadly force was reasonable under certain circumstances. *See* TEX. PENAL CODE ANN. § 9.32(b) (West 2011); Acts 2007, 80th Leg., ch. 1, § 3, eff. Sept. 1, 2007. Section 9.32(b) states that an actor's belief under subsection (a) that the deadly force was immediately necessary is presumed to be reasonable if the actor:

(1) knew or had reason to believe that the person against whom the deadly force
    was used:
    . . .
    . . .

    (C) was committing or attempting to commit . . . [murder] . . .;
(2) did not provoke the person against whom the force was used; and
(3) was not otherwise engaged in criminal activity, other than a Class C
    misdemeanor that is a violation of a law or ordinance regulating traffic at the time
    the force was used.

TEX. PENAL CODE ANN. § 9.32(b)(1)(C), (2), (3) (West 2011) ("Deadly Force in Defense of a

Person"). Although Villarreal did not request that the trial court include an instruction in the

charge on this presumption, he asserts that section 2.05(b)(1) of the Penal Code requires the trial

court to *sua sponte* include the instruction in the charge. *See* TEX. PENAL CODE ANN.

§ 2.05(b)(1) (West 2011).[4]

The Penal Code requires that a presumption that favors the defendant be submitted to the

jury "if there is sufficient evidence of the facts that give rise to the presumption . . . unless the

court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable

doubt of the presumed fact." TEX. PENAL CODE ANN. § 2.05(b)(1); *Morales v. State*, 357 S.W.3d

1, 7 (Tex. Crim. App. 2011); *Stoltz v. State*, No. 08-10-00048-CR, 2011 WL 3199337, at *5

(Tex. App.—El Paso July 27, 2011, pet. ref'd) (not designated for publication). When a rule or

statute *requires* an instruction under particular circumstances, that instruction is "the law

applicable to the case." *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008).

---

[4] Section 2.05(b)(1) of the Penal Code provides:

> When this code or another penal law establishes a presumption in favor of the defendant with
> respect to any fact, it has the following consequences:
> > (1) if there is sufficient evidence of the facts that give rise to the presumption, the issue of
> > the existence of the presumed fact must be submitted to the jury unless the court is
> > satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable
> > doubt of the presumed fact[.]

TEX. PENAL CODE ANN. § 2.05(b)(1) (West 2011).

"Such statutes and rules set out an implicit 'If-then' proposition: If the evidence raises an issue of [voluntariness, accomplice witness, confidential informant, etc.], then the trial court shall instruct the jury that [whatever the statute or rule requires]." *Id.*

During guilt-innocence, the trial court instructed the jury, in relevant part, that:

Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.

A person is justified in using deadly force against another if the actor would be justified in using force against the other in the first place, as above set out, and when the actor reasonably believes that such deadly force is immediately necessary to protect oneself against the other person's use or attempted use of unlawful deadly force.

The use of force against another is not justified in response to verbal provocation alone.

****

When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force by another, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury at the hands of such assailant, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack.

It is your duty to consider the evidence of all relevant facts and circumstances surrounding the alleged stabbings and the previous relationship existing between the accused and the alleged victim, together with all relevant facts and circumstances going to show the condition of the mind of the defendant at the time of the alleged offense. You will also consider evidence of the previous relationship, if any, existing between the defendant and the alleged victim at the time of the stabbing and any conduct or words or both between the defendant and the alleged victim at said time. In considering all the foregoing you should place yourselves in the defendant's position and view the circumstances from his standpoint alone at the time in question.

The following application paragraph followed:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 16th day of SEPTEMBER, 2010 A.D. the defendant, RENE DANIEL VILLARREAL did then and there, with intent to cause bodily injury to an individual, namely, Christopher Louis Martinez, commit an act clearly dangerous to human life that caused the death of said Christopher Louis Martinez, by stabbing him in the body with a knife, but you further find from the evidence, or you have a reasonable doubt thereof, that at the time the defendant was under attack or attempted attack from the victim, Christopher Louis Martinez, and that the defendant reasonably believed, as viewed from his standpoint, that such deadly force as he used, if any, was immediately necessary to protect himself against such attack or attempted attack, and so believing, he stabbed the victim, then you will acquit the defendant and say by your verdict "not guilty."

Generally, a defendant is entitled to an instruction on every defensive issue raised by the evidence regardless of the strength of the evidence. *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997). A defendant need not testify in order to raise a defense. *Boget v. State*, 40 S.W.3d 624, 626 (Tex. App.—San Antonio 2001), *aff'd,* 74 S.W.3d 23 (Tex. Crim. App. 2002); *Krajcovic v. State*, 351 S.W.3d 523, 528 (Tex. App.—Fort Worth 2011, pet. granted). Defensive issues may be raised by the testimony of any witness, including the State's witnesses. *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). It is not the court's function to evaluate the credibility or weight to be given the evidence raising the defensive issue. *Gibson v. State*, 726 S.W.2d 129, 132-33 (Tex. Crim. App. 1987). The fact that the evidence raising the issue may conflict with or contradict other evidence is irrelevant in determining whether a charge on the defensive issue must be given. *Id*. at 133. The purpose of this rule is to insure that the jury, not the judge, decides the relative credibility of the evidence. *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991); *Woodfox v. State*, 742 S.W.2d 408, 409-10 (Tex. Crim. App. 1987).

Based on the record before us, we conclude there is some evidence to support each of the three prongs under section 9.32(b). First, Villarreal had reason to believe that Martinez was attempting to kill him. *See* TEX. PENAL CODE ANN. § 9.32(b)(1)(C). In his statement to the

authorities, Villarreal stated that Martinez charged at him with a sharp piece of metal which Villarreal had to block with his hand, resulting in a cut on his hand. Villarreal further stated that had he not blocked the sharp piece of metal wielded by Martinez, "[Martinez] would [have] cut me in my belly" and "the dude would have killed me." Thus, there is some evidence in the record to support an inference that Villarreal reasonably believed Martinez intended to cause him serious bodily injury by committing a clearly dangerous act that would result in his death. *See* TEX. PENAL CODE ANN. § 19.02(b)(2). Second, Villarreal stated that the argument began when Martinez took his shirt off in a boasting gesture to Villarreal; therefore, there is some evidence that Villarreal did not provoke the fight. *See id.* § 9.32(b)(2). Finally, there is no evidence that Villarreal was otherwise engaged in criminal activity at the time he stabbed Martinez.[5] *See id.* § 9.32(b)(3). Thus, we conclude that Villarreal was entitled to an instruction that the jury was required to presume that Villarreal's belief that the deadly force was immediately necessary was reasonable unless the jury found that the State proved beyond a reasonable doubt that the facts giving rise to the presumption of reasonable belief did not exist. *See* TEX. PENAL CODE ANN §§ 2.05; 9.32(b).

### *Harm Analysis*

Having found that the trial court erred in failing to instruct the jury on the presumption of reasonableness, we must analyze the error for egregious harm because there was no objection by

---

[5] The State argues that Villarreal was not entitled to the instruction on the presumption of reasonableness because at the time deadly force was used, he was engaged in criminal activity, i.e., he was in possession of an illegal butterfly knife. *See* TEX. PENAL CODE ANN. §§ 46.01(1), 46.05(a)(5) (West Supp. 2012); *Cooks v. State*, No. 05-03-01128-CR, 2005 WL 914369, at *1-2 (Tex. App.—Dallas Apr. 21, 2005, pet. ref'd) (mem. op.) (not designated for publication) (describing an illegal butterfly knife). We find this argument unpersuasive, however, because in determining whether a defendant is entitled to a statutory presumption, we do not engage in a credibility analysis, but only look to whether there is some evidence to support a finding that the defendant reasonably believed the facts to be such that, if the belief were accurate, his actions would be justified by self-defense. *See Morales*, 357 S.W.3d at 7-8. Here, Villarreal's statement that he grabbed the sharp metal from Martinez and used it against him in self-defense provides some evidence that Villarreal was not otherwise in the course of committing the offense of possession of an illegal weapon.

Villarreal at trial. "Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Swearingen v. State*, 270 S.W.3d 804, 812 (Tex. App.—Austin 2008, pet. ref'd). The purpose of the egregious-harm inquiry is to ascertain whether the defendant has incurred actual, not just theoretical, harm. *Almanza*, 686 S.W.2d at 174. It is a "difficult standard." *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). Our inquiry is factual in nature and turns on the unique circumstances of this case. *See id.* Neither Villarreal nor the State has the burden to show harm or the lack thereof. *See Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008) ("[W]e affirm that burdens of proof or persuasion have no place in a harm analysis conducted under *Almanza*."). Rather, an appellate court makes its own assessment in evaluating what effect, if any, an error had on the jury's verdict by looking "only to the record before it." *Ovalle v. State*, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000). We are to consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and the weight of the probative evidence, (3) the parties' arguments, and (4) any other relevant information revealed by the record of the trial as a whole. *Allen*, 253 S.W.3d at 264; *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).

The jury charge, considered as a whole, weighs in favor of concluding that Villarreal suffered egregious harm. Nothing in the charge alerted the jury that it must presume Villarreal had a reasonable belief that the use of deadly force was necessary with respect to self-defense. Without the presumption of reasonableness instruction, Villarreal's only defense was significantly undermined. In addition, the self-defense charge contained another error in that it lacked the statutory instruction stating that Villarreal had no duty to retreat before acting in self-defense. *See* TEX. PENAL CODE ANN. § 9.32(c).

Regarding the state of the evidence, the primary contested issue at trial was whether Villarreal's actions were justified by self-defense. Villarreal stated to police that after Martinez charged at him with a sharp piece of metal, he grabbed the weapon to prevent Martinez from killing him, and in turn he stabbed Martinez once in self-defense. In contrast, none of the witnesses at trial stated that Martinez was in possession of a weapon, and all of the eyewitnesses testified that Villarreal stabbed Martinez more than once. Given the conflicting testimony regarding the circumstances surrounding the stabbing, this factor also weighs in favor of concluding Villarreal suffered egregious harm.

In examining closing argument, we note that the primary focus of the State's argument was that Villarreal was indeed the person who stabbed Martinez six times, resulting in his death. The prosecutor told the jury that it was faced with a simple murder case and that Villarreal was the only one proclaiming self-defense. The State further emphasized that self-defense was not an appropriate justification where the victim was stabbed not once, but six times. Defense counsel chose not to advance Villarreal's theory of self-defense, but instead urged the jury to pray to God to reach a "true" verdict. Because the reasonableness, or lack thereof, of Villarreal's actions was highlighted during arguments, we conclude that this weighs in favor of concluding that Villarreal suffered egregious harm.

Based on the record before us, we hold that the omitted presumption in the jury charge caused Villarreal actual, egregious harm. By failing to include the instruction on presumption of reasonableness in accordance with section 9.32(b), the trial court deprived Villarreal of the benefit of the presumption that he reasonably believed the use of deadly force was immediately necessary. We conclude that the omission of the presumption impacted the jury's verdict and vitally affected Villarreal's sole defense. Accordingly, we sustain Villarreal's second issue

related to jury charge error. Given our holding, we need not address Villarreal's remaining complaints related to ineffective assistance of counsel. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

Based on the foregoing, we sustain Villarreal's complaint of jury charge error. Accordingly, we reverse the trial court's judgment of conviction for murder, and remand the case to the trial court for a new trial. *See* TEX. R. APP. P. 43.2(d); 44.2(a).

Phylis J. Speedlin, Justice

PUBLISH