NOT DESIGNATED FOR PUBLICATION

No. 121,260

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CARL D. TUCKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS and CHRISTOPHER M. MAGANA, judges. Opinion filed December 11, 2020. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN and STANDRIDGE, JJ.

PER CURIAM: Carl D. Tucker appeals his convictions of criminal possession of a firearm and misdemeanor battery. Tucker argues this court should reverse his convictions because (1) the district court applied the wrong legal standard when it denied his motion for immunity from prosecution based on self-defense and (2) his criminal possession of a firearm conviction is unconstitutional in light of the 2010 amendments to section 4 of the Kansas Constitution Bill of Rights. We are not persuaded by Tucker's first argument and find his second argument is not properly preserved. Accordingly, we affirm Tucker's convictions.

1

FACTS

On August 22, 2017, the State charged Tucker with aggravated battery and criminal possession of a firearm. The State's charges stemmed from Tucker's August 19, 2017 altercation with his landlord Ronald Crumble. During this altercation, Tucker fired his handgun at Crumble a single time. The bullet entered and then exited Crumble's left forearm before finally lodging in Crumble's stomach.

After the charges were filed, Tucker filed a motion under K.S.A. 2017 Supp. 21-5222(b) arguing he was immune from prosecution under K.S.A. 2017 Supp. 21-5231(a) because he shot Crumble in self-defense. The State responded that Tucker's motion was without merit because Tucker provoked the altercation, which meant that he was not entitled to immunity from prosecution. See K.S.A. 2019 Supp. 21-5226(b). Alternatively, the State argued that the district court should deny Tucker's motion for immunity because Tucker's use of deadly force against Crumble was neither subjectively nor objectively reasonable under the facts of his case.

The district court held an evidentiary hearing on Tucker's immunity motion. Multiple people testified at the evidentiary hearing. Yet, only Crumble and Tucker testified about what occurred during their August 19, 2017 altercation.

During his testimony, Crumble admitted that he previously had attempted to extort utility bill payments directly from Tucker, notwithstanding the fact that the Wichita Housing Authority paid him directly for Tucker's utility bills. And Crumble also appeared to concede that once his extortion attempts failed, he decided to evict Tucker. Crumble testified that after giving Tucker an eviction notice around August 8, 2017, Tucker told him "that he was going to get [him]."

As for the August 19, 2017 altercation, Crumble explained that earlier in the day, he had collected tree limbs from his residence to burn in the backyard of the duplex he owned and at which Tucker resided. Shortly after he arrived at the duplex, Tucker exited the backdoor of his duplex apartment and approached Crumble. As Tucker got closer, Crumble saw the shape of a handgun through Tucker's shorts' pocket. Crumble said Tucker was gripping the handgun's handle, which was sticking out of the top of Tucker's shorts' pocket.

Once he realized Tucker was approaching him while gripping a handgun, Crumble feared Tucker was going to shoot him. So Crumble grabbed Tucker's wrist in an attempt to gain control over Tucker's handgun. Crumble went on to say that

> "when I grabbed his wrist and things, we kind of tussled a little bit and we fell up against a tree. . . . He was talking to me. He mentioned the fact that some people, I guess whoever he was informing for, wanted me dead or something and that he wasn't going to do [any] time, something like that. He basically twisted the pistol up [inside his shorts' pocket] and shot me."

After Tucker shot him, Crumble said he somehow was able to pin Tucker to the ground and seize Tucker's handgun. Crumble admitted that once he seized Tucker's handgun, he considered killing Tucker with the handgun. He said he ultimately decided not to kill Tucker because other tenants who were watching urged him not to. At this point, one of the other tenants took Tucker's handgun from Crumble and called the police. Crumble continued to pin Tucker to the ground until the police arrived.

Tucker also testified at the evidentiary hearing. Tucker said Crumble physically threatened him during the time Crumble was trying to extort utility payments from him. He explained that Crumble's physical threats scared him into acquiring the handgun. On the day of the altercation, Tucker decided to put a single bullet in his handgun, place his handgun in his shorts' pocket, and then sit on the back porch of his duplex apartment.

3

Shortly after Tucker sat down, Crumble arrived with the tree limbs. Tucker described what happened then:

"Well, Your Honor, after that [Crumble] saw me and he said, hey, I need to holler at you. So[,] I'm armed but I've got one bullet in the gun. And I go over to him and he says you need to have your ass out of here by September 1st. I guess he saw the imprint of the gun or something and he just rushed all of a sudden and he went for that gun and I'm, like, oh, man.

"The way I remember, I start struggling for the gun and I'm telling him get off the gun, get off the gun. We're struggling for the gun and somehow in between there the gun went off and I shot him, but it was not my intent to shoot him. I was trying to get away from him, but he was trying to get that gun. We were struggling for the gun, Your Honor.

. . . .

"He told me . . . . [L]ike I said, I guess he saw the imprint of the gun or something. He went for it. I never pulled that gun. I never pulled it. I never had my hand down in my pocket. But he rushed to get it and started grabbing for that gun, struggling for the gun. I told him get off the gun, get off the gun, get off the gun.

. . . .

"And the gun went off and I'm, like, oh, man. I remember after that I'm, like—well, I know there's only one shell in the gun, Your Honor, so I kind of let the gun go. I think, if I remember right, it fell out and he grabbed it, and by that time we're rassling [*sic*] and he's on top of me. And I remember him putting that gun to my head, but I knew, Your Honor, that I didn't have anything to worry about because the gun—the round that was in it had been discharged."

Regarding his decision to put a single bullet in his handgun, Tucker said:

"Well, it was my intention actually, Mr. Price [defense counsel], I know it might be hard to believe, but really as a bluff. I had it so I was hoping by him seeing the imprint of it he'd think, well, hey, yeah, he's not such a pushover after all, he's got a gun. But for some reason I guess he says, well, no it [does not] make any difference. Because I remember him telling me while we were struggling, he said, well, I'm going to take this gun and kill you with your own gun, that's what I'm going to do. I'm like, oh, man. I

4

remember struggling for the gun and getting my hand in some kind of way and then it went off."

After the hearing, the district court took the parties' respective arguments under advisement. Four days later, the district court ruled on Tucker's motion for immunity from the bench. The court held that under the totality of the circumstances, Tucker's use of deadly force against Crumble was not statutorily justified because Tucker provoked the altercation.

Tucker's case proceeded to a jury trial. The jury found Tucker guilty of the lesser included offense of misdemeanor battery as well as criminal possession of a firearm. The district court sentenced Tucker to 20 months' imprisonment followed by 12 months' postrelease supervision for his criminal possession of a firearm conviction, with a consecutive six-month jail term for his battery conviction.

ANALYSIS

*Immunity based on self-defense*

Tucker claims the district court erred in finding that he provoked the altercation and, based on that finding, that his use of deadly force against Crumble was not statutorily justified.

Relevant here, the Kansas Legislature enacted a series of statutes in 2010 addressing the use of force—including the use of deadly force—in defense of a person or property. See K.S.A. 2019 Supp. 21-5220 et seq. Before we address the merits of Tucker's argument on appeal, we find it helpful to summarize the particular statutes relevant to our analysis.

5

K.S.A. 2019 Supp. 21-5222(b) provides that a person is justified in the use of deadly force if the person both subjectively and reasonably believes that deadly force is necessary to prevent imminent death or great bodily harm to that person or a third person.

K.S.A. 2019 Supp. 21-5226(b) provides that a person who initially provokes the use of any force with the intent to use that force as an excuse to inflict bodily harm upon an assailant are not entitled to immunity from prosecution under K.S.A. 2019 Supp. 21-5222.

K.S.A. 2019 Supp. 21-5226(c)(1) provides that a person who initially provokes the use of any force is not entitled to immunity from prosecution unless that person had reasonable grounds to believe they were in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape that danger other than use of deadly force.

K.S.A. 2019 Supp. 21-5231(a) provides that a person who uses force justified under K.S.A. 2019 Supp. 21-5222 is immune from criminal prosecution for the use of that force.

So a defendant may move for immunity from prosecution when and if that person subjectively and reasonably believes that deadly force is necessary to prevent imminent death or great bodily harm to that person or a third person. K.S.A. 2019 Supp. 21-5222(b); K.S.A. 2019 Supp. 21-5231(a). But a defendant who initially provokes the use of force is not entitled to immunity from prosecution unless the person has reasonable grounds to believe he or she is in imminent danger of death or great bodily harm and has exhausted every reasonable means to escape the danger presented. K.S.A. 2019 Supp. 21-5226(c)(1).

In *State v. Ultreras*, 296 Kan. 828, 845, 295 P.3d 1020 (2013), the Kansas Supreme Court determined that the standard of proof for whether a defendant is entitled to immunity from criminal prosecution is probable cause. The *Ultreras* court held that the State bears the burden of establishing probable cause to believe that a defendant's use of force was not statutorily justified. 296 Kan. at 845.

In *State v. Hardy*, 305 Kan. 1001, Syl. ¶ 1, 390 P.3d 30 (2017), the Kansas Supreme Court clarified the role of the district court in deciding a motion for immunity from prosecution. When considering a motion for immunity, "the district court must consider the totality of the circumstances, weigh the evidence before it without deference to the State, and determine whether the State has carried its burden to establish probable cause that the defendant's use of force was not statutorily justified." 305 Kan. 1001, Syl. ¶ 1. The court also set forth the applicable standard of review on appeal, stating:

> "An appellate court will apply a bifurcated standard of review to a district court's determination of probable cause pursuant to K.S.A. 2016 Supp. 21-5231. When a district court's ruling entails factual findings arising out of disputed evidence, a reviewing court will not reweigh the evidence and will review those factual findings for supporting substantial competent evidence only. The ultimate legal conclusion drawn from those facts is reviewed de novo. When there are no disputed material facts, a pure question of law is presented over which an appellate court exercises unlimited review." 305 Kan. 1001, Syl. ¶ 5.

On appeal, Tucker argues the district court applied an incorrect standard in ruling on his immunity motion. Specifically, Tucker claims that instead of utilizing a "totality of the circumstances" test, the court erroneously analyzed the evidence in the light most favorable to the State by "bas[ing] its ruling solely on a credibility determination, finding that it did not accept any of the evidence presented by Mr. Tucker as valid or truthful." Tucker argues that the district court's "wholesale dismissal of Mr. Tucker's testimony was

the functional equivalent of reviewing the evidence in a light most favorable to the State, a standard of review that the *Hardy* Court explicitly rejected."

In making his argument, Tucker acknowledges that the district court cited to *Hardy* and expressly stated that it had reviewed the evidence using the totality of the circumstances standard before deciding to deny his immunity motion. But Tucker asserts the district court citation to language about credibility determinations from the unpublished opinion *In re Guardianship & Conservatorship of L.M.H.*, No. 108,297, 2013 WL 2395900 (Kan. App. 2013) (unpublished opinion), necessarily leads to the conclusion that the court did not utilize the requisite totality of the circumstances standard. Although Tucker's argument is not entirely clear, Tucker appears to believe that the district court wrongly relied on this unpublished opinion to make a credibility determination against him without first considering the evidence under *Hardy's* totality of the circumstances test. He then contends that the district court "necessarily considered the evidence under a 'light most favorable to the State' standard" by making the credibility determination against him.

The State counters that the district court correctly applied the totality of the circumstances test as required by *Hardy* when denying Tucker's immunity motion. It asserts that, when viewed in context, the district court's citation to the unpublished opinion and credibility determinations against Tucker were both proper. We agree with the State.

In this case, the district court denied Tucker's immunity motion from the bench. Before it issued its ruling, however, the district court first discussed the law it was relying on to deny Tucker's motion. The court informed the parties that it had reviewed *Hardy* as well as other older cases from our Supreme Court involving immunity motions. The court stated that it also had reviewed the applicable statutes, see K.S.A. 2019 Supp. 21-5231,

8

K.S.A. 2019 Supp. 21-5222, and K.S.A. 2019 Supp. 21-5226. The court then made the following comments on the issue of credibility determinations:

> "Credibility of witnesses is critical in a fact-intensive motion and case like this. Case law recognizes the powerful vantage point of the district court or the trial judge in observing witnesses as they testify. An appearance on the witness stand is, and this is a quote, perhaps the most discerning crucible for separating honesty and accuracy from misstatement. I skipped some of the verbiage in there. That's a really good statement from an unrelated case of [*In re Guardianship & Conservatorship of L.M.H.*] That's an unpublished case from May 31st, 2013.
>
> "I just like that language because it identifies the importance of live testimony and how that testimony can affect credibility and decisions about credibility that have an effect on the outcome of a motion like this and the importance of seeing that testimony and hearing that testimony and observing the witnesses. In a case like this and in fact this case, being able to see and hear witnesses as they testify have borne the truth of that statement out."

After discussing the law upon which it relied to make its ruling, the district court made numerous findings of fact. Those fact-findings included the following:

> "Defendant initially provoked Ronald Crumble by, one, coming out of his residence and approaching Ronald Crumble, thereby creating a dangerous situation; two, carrying a loaded firearm to confront Ronald Crumble. The defendant did not have to load the gun to create a 'bluff,' as the defendant testified was his purpose. Three, carrying the loaded firearm in a manner that it was visible and obvious to Ronald Crumble that the defendant possessed a firearm either by creating an 'imprint' of the gun in his shorts, which was the defendant's testimony, or by holding the grip of the firearm outside of the right pants pocket of his shorts, which was Mr. Crumble's testimony. I would refer to K.S.A. 21-5226."

Finally, after making its findings of fact, the district court denied Tucker's immunity motion. Specifically, the court held that it had reviewed the totality of the

circumstances and found that the State had met its burden of establishing that Tucker's use of force was not statutorily justified.

So before making its decision to deny Tucker's motion for immunity, the court first cited the law, including language from the *Hardy* opinion and language from an unrelated unpublished opinion on the import of a district court's credibility determination. The court then made findings of fact, including factual determinations that were inconsistent with Tucker's testimony but consistent with Crumble's testimony about who provoked the altercation. Although the district court did not expressly convey that it was making a credibility determination against Tucker, it undoubtedly did so. Specifically, the court cited to the language about credibility determinations in the unpublished opinion before finding Crumble's testimony—that Tucker provoked the altercation—to be more credible. Finally, the district court relied on its factual findings, including its credibility determination against Tucker, to deny Tucker's immunity motion.

Simply put, we are not persuaded by Tucker's argument that the district court's citation to language about credibility determinations from the unrelated unpublished opinion means the court failed to consider the evidence under a totality of the circumstances standard. District courts are permitted to make credibility determinations when considering a defendant's immunity motion. Indeed, in the recent immunity case *State v. Macomber*, 309 Kan. 907, 916-18, 441 P.3d 479 (2019), our Supreme Court affirmed the district court's denial of Macomber's immunity motion because substantial competent evidence supported the district court's credibility determination against Macomber. In reaching this holding, the *Macomber* court emphasized that it must defer to credibility determinations made by the district court under the substantial competent evidence standard of review. 309 Kan. at 916. So contrary to Tucker's argument, a district court may make credibility determinations when ruling on an immunity motion while also complying with the totality of the circumstances' test set forth in *Hardy*. And that is precisely what happened here.

10

Finally, it is worth noting that although Tucker does not challenge the adequacy of the evidence supporting the district court's credibility determination against him, Crumble's testimony supported the district court's fact-finding that Tucker provoked the altercation. Again, Crumble testified that Tucker approached him while gripping his handgun in the manner that made him believe that Tucker intended to shoot him. Although Crumble's criminal history and attempts to extort utility payments from Tucker raise questions about Crumble's credibility, Tucker had credibility issues too. Indeed, Tucker testified that he first met Crumble when they were both serving time in prison. The district court was in the difficult position of discerning the truth from two witnesses who had credibility issues. This is why appellate courts defer to a district court's credibility determinations. See *Macomber*, 309 Kan. at 916 (appellate court does not reweigh evidence, resolve conflicts in evidence, or pass on credibility of witnesses when reviewing district court's factual findings for substantial competent evidence). Crumble testified that Tucker provoked the altercation; therefore, substantial competent evidence supports the district court's credibility findings about who started the altercation.

*Failure to preserve constitutional challenge*

Tucker argues his criminal possession of a firearm conviction is unconstitutional in light of the 2010 amendments to section 4 of the Kansas Constitution Bill of Rights. In support of his argument, Tucker maintains that the language in the amended constitutional provision grants to the citizens of Kansas an unfettered and individual right to possess a firearm, regardless of past criminal activity. Because the statute criminalizes the possession of a firearm by certain convicted felons, Tucker claims K.S.A. 2019 Supp. 21-6304 infringes on the right to possess a firearm as guaranteed by section 4.

In 2010, Kansans voted to amend section 4 of the Kansas Constitution Bill of Rights to read as follows:

11

"A person has the right to keep and bear arms for the defense of self, family, home and state, for lawful hunting and recreational use, and for any other lawful purpose; but standing armies, in time of peace, are dangerous to liberty, and shall not be tolerated, and the military shall be in strict subordination to the civil power." L. 2009, ch. 152, § 1.

Before the amendment, the language in section 4 did not expressly provide Kansans an individual right to bear arms. The original version provided: "The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be tolerated, and the military shall be in strict subordination to the civil power." See L. 1861, p. 48. This older version of section 4 more closely mirrored a person's right to bear arms under the Second Amendment to the United States Constitution, which provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to bear Arms, shall not be infringed."

In his brief, Tucker argues section 4 of the Kansas Constitution Bill of Rights gives Kansans a greater right to bear arms than the Second Amendment's right to bear arms for two reasons: (1) because section 4 expressly provides Kansans with an individual right to bear arms and (2) because section 4 contains no language limiting a person's individual right to possess a firearms. Based on this argument, Tucker claims this court must reverse his criminal possession of a firearm conviction because "no level of infringement" on his individual right to possess a firearm under the 2010 amendments to section 4 is acceptable. Alternatively, Tucker argues that this court must consider the constitutionality of the criminal possession of a firearm statute in light of the 2010 amendments to section 4 under a strict scrutiny constitutional analysis. He contends that his conviction is unconstitutional under that analysis.

In his brief, Tucker candidly acknowledges that he did not raise this constitutional argument—either as a facial challenge or as the statute applies to him—before the district

court. Tucker also implicitly recognizes that this court generally does not consider arguments raised for the first time on appeal. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). Still, Tucker contends that this court may consider his argument for the first time on appeal under "the first and second exceptions" to the preceding general rule. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014) (this court may consider argument raised for first time on appeal if [1] new argument involves question of law arising on proved or admitted facts that is finally determinative of case, [2] consideration of new argument is necessary to serve ends of justice, or [3] district court's judgment may be upheld as right for wrong reason).

But Tucker's contention that this court should consider his constitutional challenge for the first time on appeal is conclusory in nature. In fact, Tucker's entire preservation analysis is set forth within a single paragraph. In this paragraph, Tucker mentions "the first and second exceptions" to the general rule barring appellate courts from considering arguments raised for the first time on appeal but fails to cite any law to support his argument. Significantly, Tucker fails to explain why one of those exceptions applies under the particular facts here.

When an appellant fails to adequately brief his or her argument, this court will deem that argument waived or abandoned. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019). Similarly, when an appellant raises an argument incidentally in his or her brief without adequate analysis, this court will deem that argument waived or abandoned. *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018). Also, this court will not consider an argument not supported by pertinent authority. *Salary*, 309 Kan. at 481.

We find Tucker's preservation argument to be inadequately briefed, insufficiently analyzed, unsupported by legal authority, and wholly conclusory. Under Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34), Tucker had a duty to explain why he did not raise his constitutional challenge below and why this court should consider his

13

constitutional challenge for the first time on appeal. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015) (appellant's violation of Rule 6.02 is akin to improperly briefing argument). He failed to satisfy that duty. See *State v. Johnson*, No. 121,187, 2020 WL 5587083, at *5-6 (Kan. App. 2020) (unpublished opinion) (declining to review unpreserved claim that criminal possession of firearm conviction is unconstitutional in light of 2010 amendments to section 4 of the Kansas Constitution Bill of Rights based on general rule that constitutional issues may not be raised for first time on appeal and failure by appellant to show that exception to this rule justified review), *petition for rev. filed* October 19, 2020. Because he failed to properly preserve his constitutional argument, we decline to consider it on appeal.

Affirmed.