NOT DESIGNATED FOR PUBLICATION

No. 122,430

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAWN MATTHEW HIATT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; MICHAEL D. GIBBENS, judge. Opinion filed February 26, 2021. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Shawn M. Boyd*, assistant county attorney, *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MALONE and WARNER, JJ.

PER CURIAM: Shawn Hiatt appeals his convictions of attempted voluntary manslaughter and criminal possession of a firearm after he shot Marquis Holmes. Hiatt argues the district court should have granted his pretrial motion for immunity from prosecution because he was acting in self-defense, as Holmes had previously stabbed him. But the shooting took place 10 minutes after the stabbing, after Hiatt had gone to retrieve his weapon and found Holmes in a different location. Under these facts, the district court properly found that immunity was not warranted. We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 2018, Shawn Hiatt went to Carl Dearinger's house to speak with Dearinger's fiancée. Not long after Hiatt arrived, another man—Holmes—burst through the door and charged towards Hiatt. (Hiatt and Holmes had a previous disagreement that apparently sparked the assault.) Holmes began struggling with Hiatt and attacked him with a knife; Hiatt was unarmed. After stabbing Hiatt several times, Holmes ran out of the house with the knife. Hiatt, who was bleeding heavily from his leg and hip, left Dearinger's house a few minutes after Holmes fled.

Hiatt limped down an adjacent alley and encountered Steve Randle. One of Dearinger's neighbors was outside on a balcony above the two men; the neighbor knew Randle and overheard the conversation. The neighbor heard Hiatt tell Randle that he needed to go to the hospital. She also heard Hiatt ask Randle, "Where's the guy at? I want to speak to him." (She later learned from Randle that Hiatt was talking about Holmes.) Hiatt proceeded to limp down the alley to his car—a silver SUV borrowed from his grandfather—and left.

About 10 minutes after he had been stabbed, Hiatt parked the SUV by Dearinger's house. According to Hiatt, he returned because his wallet had fallen out of his pocket during Holmes' attack. But when Dearinger later described the encounter, he did not recall Hiatt asking about his wallet. Instead, Dearinger recalled that he was outside the house when Hiatt drove up. Hiatt stayed near the SUV and asked Dearinger for something to help stop his bleeding. Dearinger's fiancée gave Hiatt some towels, and Dearinger told Hiatt that he should go to the hospital. Dearinger then looked down the street and saw Holmes walking toward Dearinger's house. At that point, Dearinger said, Hiatt got back in his car and drove toward Holmes. Moments later, Dearinger heard gunshots coming from the direction Hiatt had gone.

2

The neighbor who had seen Hiatt in the alley with Randle also heard the gunshots. A moment later she saw Holmes, who had suffered several gunshot wounds, coming through a field near the alley. Holmes asked her to call an ambulance.

Hiatt painted a different picture of the events surrounding the shooting. He explained that when he was parked by Dearinger's house, he saw Holmes and two other men running down the street toward him. Hiatt thought Holmes had something in his hand and yelled at Holmes to stop. When Holmes kept coming toward him, Hiatt grabbed his grandfather's gun, which was in a holster in the side pocket of the SUV, and fired, shooting Holmes five times from about 20 feet away. Hiatt then drove off.

After the shooting, Hiatt drove to a nearby hospital so he could be treated for his stab wounds. A detective from the Leavenworth Police Department went to the hospital to speak with Hiatt, having learned from local police that Hiatt was stabbed near the area and around the same time that the shooting occurred. When he arrived at the hospital, the detective saw the silver SUV in the parking lot. Multiple witnesses had indicated that a silver SUV was involved in the shooting, so the detective called the vehicle's registered owner (Hiatt's grandfather) and met him in the hospital parking lot. Hiatt's grandfather let the detective search the SUV—a search that revealed two towels, a wallet, and a gun.

The detective interviewed Hiatt in the emergency room, explaining that he was investigating both the stabbing of Hiatt and the shooting of Holmes. Hiatt described the circumstances leading up to the stabbing. The detective then told Hiatt about the gun found in the SUV and requested clarification about the sequence of events. When Hiatt waffled on his answer, the detective asked him if he shot Holmes. At that point, Hiatt stopped the interview.

The State charged Hiatt with attempted first-degree murder and criminal possession of a firearm. Hiatt requested immunity under K.S.A. 2018 Supp. 21-5231,

Kansas' use-of-force immunity statute. Hiatt claimed that he had returned to the scene of the stabbing to retrieve personal items from the house, that he was not in search of Holmes, and that he only fired the gun because he feared for his life. The State argued that Hiatt's motion for immunity should be denied because his conduct was not subjectively or objectively justifiable and that Hiatt had become the aggressor when he returned to Dearinger's house, armed with a gun.

The district court held a hearing on Hiatt's immunity request. Dearinger, the onlooker, the detective, and Hiatt all testified. After considering the evidence, the court found that the State had met its burden to show the case should proceed because a reasonable person in Hiatt's shoes would not have perceived that the use of deadly force was necessary to prevent imminent death or great bodily injury. The court explained that it had considered "the totality of the circumstances" to reach its decision, "including the fact that Mr. Hiatt had been previously stabbed by Mr. Holmes and that a period of time had passed from the time that Mr. Holmes stabbed Mr. Hiatt to the time that Mr. Hiatt fired the shots, striking Mr. Holmes." The court thus denied Hiatt's motion for immunity under K.S.A. 2018 Supp. 21-5231.

At trial, Hiatt continued to argue that he had acted in self-defense. The jury ultimately found Hiatt guilty of the lesser included offense of attempted voluntary manslaughter—often called imperfect self-defense—because Hiatt had acted with an honest but unreasonable belief that his use of deadly force was justified. The jury also found Hiatt guilty of criminal possession of a firearm. Hiatt appeals.

DISCUSSION

Hiatt argues the district court erred when it denied his pretrial motion for immunity. He asserts that the State's case against him should have been dismissed and the matter should have never proceeded to trial.

4

Under K.S.A. 2020 Supp. 21-5222(b), a person is "justified in the use of deadly force" when he or she "reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm" to that person or to someone else. This statute includes both subjective and objective components. A defendant's use of force is justified only if he or she "sincerely believed it was necessary to kill to prevent imminent death or great bodily harm to the defendant or a third person." *State v. Thomas*, 311 Kan. 403, 410, 462 P.3d 149 (2020). And the statutory justification only applies when "a reasonable person in the defendant's circumstances would have perceived the use of deadly force in self-defense as necessary to prevent imminent death or great bodily harm." 311 Kan. at 410-11.

A person who is justified in the use of deadly force under K.S.A. 2020 Supp. 21-5222(b) (and whose conduct meets other statutory requirements) is "immune from criminal prosecution and civil action" for that act. K.S.A. 2020 Supp. 21-5231(a). This statute provides "'true immunity'" from suit. *State v. Collins*, 311 Kan. 418, 424, 461 P.3d 828 (2020). In other words, "K.S.A. 2019 Supp. 21-5231 provides not only a defense to criminal liability, but also complete immunity from criminal prosecution" and civil actions. *State v. Phillips*, 312 Kan. 643, 659, 479 P.3d 176 (2021); see K.S.A. 2020 Supp. 21-5231(a). For this reason, the district court must act as the gatekeeper to "insulate . . . qualifying cases from continued prosecution and trial." 312 Kan. at 655.

When a defendant in a criminal case files a motion requesting immunity under K.S.A. 2020 Supp. 21-5231—as Hiatt did here—the State must "come forward with evidence" to show probable cause "that the defendant's use of force was not statutorily justified." 312 Kan. at 656. The State must convince the district court that the evidence is "sufficient for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of [the] defendant's guilt despite the claim of justified use-of-force immunity." 312 Kan. 643, Syl. ¶ 3. Practically speaking, this means that the State must

5

show probable cause that "(1) the defendant did not honestly believe the use of force was necessary" or "(2) a reasonable person would not believe the use of force was necessary under the circumstances." 312 Kan. 643, Syl. ¶ 4. The State may also overcome a defendant's request for immunity by demonstrating that the defendant was the initial aggressor as defined in K.S.A. 2020 Supp. 21-5226 and thus provoked the use of force. See 312 Kan. 643, Syl. ¶ 5.

As the gatekeeper, the district court must "consider the totality of the circumstances, weigh the evidence before it without deference to the State, and determine whether the State has carried its burden to establish probable cause that the defendant's use of force was not statutorily justified." *State v. Hardy*, 305 Kan. 1001, 1011, 390 P.3d 30 (2017). This process involves two steps. First, the court must resolve conflicting evidence and make findings of fact based on the evidence presented. Next, the court must determine whether the State has met its probable cause burden to show that the prosecution may proceed beyond the defendant's immunity request. *Collins*, 311 Kan. at 425; *Thomas*, 311 Kan. at 413-14. Though the court does not have to make particularized findings on the record explaining its analysis, the record nevertheless must demonstrate the court "not only recognized but also applied the appropriate legal standard" to reach its conclusion. *Phillips*, 312 Kan. 643, Syl. ¶ 6.

Appellate courts review the factual findings underlying a district court's ruling on use-of-force immunity for substantial competent evidence, deferring to those findings if they are supported by legal and relevant evidence in the record. See *Phillips*, 312 Kan. at 656; *State v. Macomber*, 309 Kan. 907, 916, 441 P.3d 479, *cert. denied* 140 S. Ct. 319 (2019). We do not reweigh conflicting evidence or second-guess a district court's credibility assessments. *Hardy*, 305 Kan. 1001, Syl. ¶ 5. And we review the district court's ultimate legal conclusion—whether immunity applies—de novo. *Phillips*, 312 Kan. at 656.

Hiatt frames his argument as a claim that the district court misapplied the legal standard for use-of-force immunity. But on closer review, he focuses on the manner in which the court described the facts and weighed the evidence. He asserts that the district court failed to make findings about who the aggressor was in the second confrontation between himself and Holmes, when Hiatt was in the SUV. And he argues that the court's ruling failed to take into account all the circumstances surrounding the shooting.

Contrary to Hiatt's assertions, the district court was not required to make a factual finding about who the aggressor was in the interaction. Instead, the court had to determine whether the State had shown probable cause to believe Hiatt's use of deadly force was not legally justified. See *Phillips*, 312 Kan. at 657-58. Kansas law provides that a person's use of force is *not* justified when he or she provokes an attack. See K.S.A. 2020 Supp. 21-5226. But this does not mean—as Hiatt appears to argue—that a person who is *not* the initial aggressor is automatically immune from prosecution for his or her actions. Rather, the district court was required to determine (1) whether Hiatt actually believed that it was necessary to shoot Holmes to protect himself and (2) whether a reasonable person would reach that same conclusion. See *Collins*, 311 Kan. at 425; *Thomas*, 311 Kan. at 413-14.

Hiatt testified that he shot at Holmes because he feared for his life—a position the jury appears to have found compelling at his subsequent trial, given Hiatt's ultimate conviction for attempted involuntary manslaughter instead of attempted first-degree murder. But his subjective belief, standing alone, does not give rise to immunity from prosecution under K.S.A. 2020 Supp. 21-5231. And the district court found the State had shown probable cause to believe Hiatt's use of force was not objectively reasonable.

Based on the evidence presented at the immunity hearing, a person could conscientiously entertain a reasonable belief that Hiatt's decision to shoot Holmes was not legally justified. Use-of-force immunity is only available when the defendant's

7

actions were necessary to defend against "imminent" injury or death. See K.S.A. 2020 Supp. 21-5222(a), (b). Hiatt returned to Dearinger's house about 10 minutes after his initial encounter with Holmes. The fact that Hiatt was heard asking where Holmes was suggests he was looking for another physical confrontation. And according to Dearinger, Hiatt "took off" driving towards Holmes (who was on foot) when he saw him and shot him moments later.

We agree with the district court that a reasonable person could entertain a belief of Hiatt's guilt despite his claim that he acted in self-defense. The district court did not err when it denied Hiatt's request for immunity under K.S.A. 2018 Supp. 21-5231.

Affirmed.