No. 55,353

STATE OF KANSAS, *Appellee*, v. ROBERT C. JOHNSON, *Appellant*.

(666 P.2d 706)

Opinion filed July 15, 1983.

*Robert L. Pottroff*, of Myers and Pottroff, of Manhattan, argued the cause and was on the brief for appellant.

*Keith D. Hoffman*, county attorney, argued the cause and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Robert C. Johnson appeals from his conviction by a jury of four felony counts of giving a worthless check. K.S.A. 21-3707.

During the month of June, 1982, four checks were issued by Your Aerobics Fitness Center, Inc., a Kansas corporation, a business enterprise principally owned and managed by Johnson. Three of the checks were issued to Kathryn Lauren Kahn and one to Kay Barrett, both being employees of the corporation. When the checks were presented for payment to the drawee bank there were insufficient funds in the corporate account to cover the checks. Each of the checks was in an amount in excess of fifty dollars and all of them were signed by Johnson as president of the corporation. At trial Johnson did not deny that he had issued the checks nor did he deny that he knew at the time there were insufficient funds on deposit for payment of the checks. The defense was that the employees knew at the time they accepted the checks that the corporation was in dire financial straits and that there were insufficient funds on deposit to

pay the checks. The employees testified that although they may have known that the corporation was in financial difficulties, neither had actual knowledge at the time the checks were received that the funds on deposit were insufficient to pay the checks. Each one also testified that she did not think Johnson had any intention to cheat her out of the money or to defraud her. Several points are presented on appeal.

K.S.A. 21-3707 provides:

"(1) Giving a worthless check is the making, drawing, issuing or delivering or causing or directing the making, drawing, issuing or delivering of any check, order or draft on any bank, credit union, savings and loan association or depository for the payment of money or its equivalent *with intent to defraud and knowing, at the time of the making, drawing, issuing or delivering of such check,* order or draft, *that the maker or drawer has no deposit in or credits with the drawee or has not sufficient funds in, or credits with, the drawee for the payment of such check,* order or draft in full upon its presentation.

"(2) In any prosecution against the maker or drawer of a check, order or draft payment, of which has been refused by the drawee on account of insufficient funds, *the making, drawing, issuing or delivering of such check shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or on deposit with, the drawee* unless the maker or drawer pays the holder thereof the amount due thereon and a service charge not exceeding $3 for each check, within seven days after notice has been given to the maker or drawer that such check, draft or order has not been paid by the drawee. As used in this section, 'notice' includes oral or written notice to the person entitled thereto. Written notice shall be presumed to have been given when deposited as restricted matter in the United States mail, addressed to the person to be given notice at such person's address as it appears on such check, draft or order.

"(3) It shall be a defense to a prosecution under this section that the check, draft or order upon which such prosecution is based:

(a) Was postdated, or

(b) was given to a payee who had knowledge or had been informed, when the payee accepted such check, draft or order, that the maker did not have sufficient funds in the hands of the drawee to pay such check, draft or order upon presentation.

"(4) Giving a worthless check is a class E felony if the check, draft or order is drawn for $50 or more. Giving a worthless check is a class A misdemeanor if the check, draft or order is drawn for less than $50." (Emphasis added.)

Written notice as provided in subsection (2) was properly served on Johnson and he does not deny receipt of the notice.

Appellant contends that instruction number eleven given to the jury shifted the burden of proof to the defendant in violation of the due process clause of the Fourteenth Amendment as interpreted by statutes and case law requiring that the State

prove every element of a criminal offense beyond a reasonable doubt. Instruction eleven read:

"In any prosecution against the maker or drawer of a check, order or draft, payment of which has been refused by the drawee on account of insufficient funds, the making, drawing, issuing or delivering of such check shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or on deposit with, the drawee unless the maker or drawer pays the holder thereof the amount due thereon and a service charge not exceeding $3.00 for each check, within seven days after notice has been given to the maker or drawer that such check, draft or order has not been paid by the drawee. As used in this section 'notice' includes oral or written notice to the person entitled thereto. 'As used in this instruction, *"prima facie evidence" is evidence that on its face is true, but may be overcome by evidence to the contrary.'* " (Emphasis added.)

No objection was made at time of trial to instruction eleven and unless the instruction was clearly erroneous it is not properly before us on appeal. K.S.A. 60-251(*b*). Is the instruction clearly erroneous? We think so.

Appellant attacks the combination of the provision establishing prima facie evidence of "intent to defraud and of knowledge of insufficient funds" contained in K.S.A. 21-3707(2), and the last sentence of instruction eleven as creating a conclusive presumption unless overcome by evidence to the contrary thereby resulting in a shift of the burden of proof to the defendant. We have previously upheld K.S.A. 21-3707(2) as being constitutional on its face. *State v. Haremza,* 213 Kan. 201, Syl. ¶¶ 4 and 5, 515 P.2d 1217 (1973). The questioned portion of the instruction in the case at bar is identical to language in the instructions in *State v. Powell,* 220 Kan. 168, 551 P.2d 902 (1976), which we approved. In *Haremza* we held that the statute creates a rebuttable statutory presumption which only affects the burden of going forward with the evidence and not the ultimate burden of proof. *Haremza* and its progeny were decided before the United States Supreme Court decided *Sandstrom v. Montana,* 442 U.S. 510, 61 L.Ed.2d 39, 99 S.Ct. 2450 (1979), and the recent case of *Connecticut v. Johnson,* 460 U.S. _____, 74 L.Ed.2d 823, 103 S.Ct. 969 (1983).

In *Sandstrom* the jury was instructed, in a case in which intent was an element of the crime charged, that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The Court held that such an instruction was unconstitutional as it could be concluded by the jury as a conclusive presumption or one which shifted the burden of proof or of

persuasion to the defendant, either of which would be in violation of the Fourteenth Amendment. The Court stated:

"First, a reasonable jury could well have interpreted the presumption as 'conclusive,' that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their 'ordinary' consequences), unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than 'some' evidence—thus effectively shifting the burden of persuasion on the element of intent. Numerous federal and state courts have warned that instructions of the type given here can be interpreted in just these ways.

. . . .

"We do not reject the possibility that some jurors may have interpreted the challenged instruction as permissive, or, if mandatory, as requiring only that the defendant come forward with 'some' evidence in rebuttal. However, the fact that a reasonable juror could have given the presumption conclusive or persuasion-shifting effect means that we cannot discount the possibility that Sandstrom's jurors actually did proceed upon one or the other of these latter interpretations. And that means that unless these kinds of presumptions are constitutional, the instruction cannot be adjudged valid.

. . . .

"As in *Morissette* [342 U.S. 246 (1952)] and *United States Gypsum Co.* [438 U.S. 422 (1978)], a conclusive presumption in this case would 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' and would 'invade [the] factfinding function' which in a criminal case the law assigns solely to the jury. The instruction announced to David Sandstrom's jury may well have had exactly these consequences. Upon finding proof of one element of the crime (causing death), and of facts insufficient to establish the second (the voluntariness and 'ordinary consequences' of defendant's action), Sandstrom's jurors could reasonably have concluded that they were directed to find against defendant on the element of intent. The State was thus not forced to prove 'beyond a reasonable doubt . . . every fact necessary to constitute the crime . . . charged,' 397 U.S., at 364, and defendant was deprived of his constitutional rights as explicated in *Winship* [397 U.S. 358 (1970)].

"A presumption which, although not conclusive, had the effect of shifting the burden of persuasion to the defendant, would have suffered from similar infirmities. If Sandstrom's jury interpreted the presumption in that manner, it could have concluded that upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden was shifted to the defendant to prove that he lacked the requisite mental state. Such a presumption was found constitutionally deficient in *Mullaney v. Wilbur*, 421 U.S. 684 (1975). . . .

"Because David Sandstrom's jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption like that in *Mullaney*, or a conclusive presumption like those in *Morissette* and *United States Gypsum Co.*, and because either interpretation would have deprived defendant of his right to

the due process of law, we hold the instruction given in this case unconstitutional." pp. 517-24.

It has long been recognized that any instruction which shifts the burden of proof or of persuasion to the defendant is unconstitutional and is clearly erroneous. It appears that under *Sandstrom* any instruction which might reasonably be construed by the jury as shifting the burden of proof to the defendant is also unconstitutional. Obviously, instruction eleven in the instant case, if not actually shifting the burden of proof to the defendant, could reasonably have been so construed by the jury.

In *Connecticut v. Johnson*, 460 U.S. _____, 74 L.Ed.2d 823, 103 S.Ct. 969 (1983) the Court had before it another case in which the jury had been instructed upon the conclusive presumption of intent based upon a person's voluntary acts. The case had been tried in the state courts before the decision in *Sandstrom*. While the issue in *Johnson* was whether a *Sandstrom*-type instruction can ever be harmless error, the Court had occasion to comment at length upon its decision in *Sandstrom*. The *Johnson* Court stated:

"In *Sandstrom* the jury was instructed that 'the law presumes that a person intends the ordinary consequences of his voluntary acts.' 442 U.S., at 512. We held that instruction unconstitutional because a reasonable juror might have viewed it as creating a conclusive or burden-shifting presumption on intent." 74 L.Ed.2d at 832.

The Court went on to note:

"We note that a defendant in a criminal trial is justified, of course, in defending solely in reliance on the presumption of his innocence and the State's burden of proof." 74 L.Ed.2d at 835, n. 16.

Our court anticipated the results of *Sandstrom* in 1973 when it was held that a *Sandstrom*-type instruction without qualifying language constituted error. *State v. Warbritton*, 211 Kan. 506, 506 P.2d 1152 (1973). PIK Crim. 2d 59.06-A, after setting forth the elements of the statute necessary to create the presumption of intent to defraud and of knowledge of insufficient funds under K.S.A. 21-3707(2), includes the following:

"The presumption may be considered by you along with all other evidence in the case. You may accept or reject it in determining whether the State has met the burden to prove that the defendant had (the intent to defraud) (knowledge of insufficient funds in, or on deposit with the [bank] [credit union] [savings and loan association] [depository]). This burden never shifts to the defendant."

Similar instructions which protect the defendant's rights when adverse presumptions are proper are found at PIK Crim. 2d 54.01 and 54.01-B. In *State v. Smith,* 223 Kan. 192, 573 P.2d 985 (1977), we held:

"A statutory presumption that proof of one fact shall constitute prima facie evidence of another is rebuttable and governs only the burden of going forward with the evidence, not the ultimate burden of proof. Likewise, the use of a presumption to establish prima facie evidence does not destroy a defendant's presumption of innocence, nor does it invade the province of the jury as fact finders." Syl. ¶ 1.

The rebuttable nature of the presumption created by K.S.A. 21-3707(2) has been recognized in a number of cases. See *State v. Calhoun,* 224 Kan. 579, Syl. ¶ 1, 581 P.2d 397 (1978); *State v. Fisher,* 2 Kan. App. 2d 546, 583 P.2d 1038 (1978). We adhere to our prior decisions that a *rebuttable statutory presumption* constitutes a rule of evidence and is constitutional; however, under the pronouncements of *Sandstrom* and *Johnson,* the jury must be clearly instructed as to the nature and extent of the presumption and that it does not shift the burden of proof to the defendant. Any instruction which may reasonably lead the jury to believe that a presumption is conclusive or that the burden to disprove an element of the crime rests with the defendant is unconstitutional. The instruction in the instant case could clearly have led the jury to believe that the burden was upon the defendant to overcome the rebuttable presumption of intent to defraud and that upon failure to do so, the presumption was conclusive regardless of other evidence to the contrary. That this may have happened is highly possible in view of the testimony of both victims that they did not believe the defendant intended to defraud them and the evidence of their knowledge of the corporation's precarious financial condition. Instruction number eleven was clearly erroneous and requires reversal of the conviction.

Appellant also attacks his conviction on the grounds there can be no "intent to defraud" as required by the statute when the worthless check is given for a pre-existing debt. K.S.A. 21-3110 provides in part:

"(9) 'Intent to defraud' means an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property.
. . . . .

"(16) 'Property' means anything of value, tangible or intangible, real or personal."

The defendant contends on appeal that when a worthless check is given for a pre-existing debt, there can be no conviction under the statute as the recipient of the check does not "assume, create, transfer, alter or terminate a right, obligation or power with reference to property." His argument is that the pre-existing nature of the debt precludes as a matter of law any intent to defraud. The four checks which provided the basis for this prosecution were all given to pay for services already rendered which were obligations of the fitness center existing prior to the issuance of the checks. Regardless of the merits of this argument, as the issue was not presented to the trial court, it is not properly before us and will not be considered for the first time on appeal. *Anderson v. Overland Park Credit Union*, 231 Kan. 97, Syl. ¶ 6, 643 P.2d 120 (1982). In view of the conclusion reached on the erroneous nature of instruction eleven, other points raised by the appellant need not be addressed.

The judgment is reversed and the case remanded for a new trial.