NOT DESIGNATED FOR PUBLICATION

No. 128,504

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MADISON BEESON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Submitted without oral argument. Opinion filed June 5, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Ashley McGee*, assistant county attorney, *Amy Aranda*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE and ATCHESON, JJ.

MALONE, J.: Madison Beeson appeals her convictions of theft and unlawful possession of a tool to remove theft detection devices. Beeson claims: (1) The district court erred by allowing the State to amend the complaint on the morning of the trial by expanding the dates one of the charges was committed; (2) the district court erred by failing to properly instruct the jury on the burden of proof relating to permissive inferences; (3) the district court erred by instructing the jury on aiding and abetting; and (4) there was insufficient evidence to support the conviction of unlawful possession of a

1

tool to remove theft detection devices. After thoroughly reviewing the record and the parties' arguments, we find no reversible error and affirm the district court's judgment.

*Factual and procedural background*

On April 1, 2024, Emporia police officers responded to a report of shoplifting at a Wal-Mart. The officers were informed that Beeson and her boyfriend, Edgar Bedolla, had shoplifted on several days. According to video evidence at the Wal-Mart, on February 4, 2024, Beeson and Bedolla stole an "Alpha Key," which is a universal key that allows store employees to unlock products that have theft detection devices attached to them. The two suspects were not stopped on that day. Beeson and Bedolla returned on March 5, 2024, where they used the Alpha Key to steal jewelry locked in anti-theft boxes. They returned again on March 25 and April 1, 2024, where they stole several more items and were eventually confronted by store employees, who called the police.

On April 15, 2024, the State charged Beeson with one count of misdemeanor theft of various items from the Wal-Mart and one count of unlawful possession of a tool to remove theft detection devices, a severity level 9 nonperson felony. The original complaint alleged the unlawful possession count occurred on or about March 5, 2024.

The case proceeded to a jury trial on September 16, 2024. At the beginning of trial, before the jury was empaneled, the State moved to amend the complaint to expand the dates on which the unlawful possession count occurred to include from February 4, 2024, to March 5, 2024. Beeson's trial counsel acknowledged on the record that he and the prosecutor had emailed back and forth about the amendment "last week." Beeson's counsel argued that the State had ample time to amend the complaint earlier. Counsel also argued that "we believe that allowing an amended complaint of this nature at this time unfairly prejudices the defendant and the planned defenses that she has," but counsel did not elaborate how the amendment would prejudice Beeson. The State responded that

2

Beeson had "the same discovery that the State has and was aware of the date ranges with the charging affidavit" and that caselaw supported an amendment before trial. The district court, without additional explanation, ruled, "Court will allow the amendment."

The State called four witnesses. Ryan Rodriguez, a loss prevention officer for Wal-Mart, testified first. Rodriguez described what an Alpha Key was, how it worked, where they were located around the store, and the kinds of items they protected. On February 4, 2024, Rodriguez became aware that an Alpha Key from a register in the cosmetics section was missing. He reviewed security camera footage and saw "two individuals remove the Alpha Key." The footage showed a man and woman "enter the cosmetics' bullpen," where the woman tried to detach the Alpha Key from a cash register but could not detach the key. The man then "yanked it off of the register." Rodriguez reviewed the store's transactions and identified Bedolla as the man in the footage through his debit or credit card, which he used to make a purchase that same day. Rodriguez identified Beeson at trial as the woman with Bedolla in the store on February 4, 2024.

As Beeson and Bedolla left the store on February 4, 2024, the alarm sounded as they passed through the doors. Rodriguez testified that an alarm would sound if an anti-theft device or an Alpha Key passed through the doors. Nobody responded to the alarms sounding. Rodriguez continued to track Beeson and Bedolla through the security camera footage until they entered a blue car in the parking lot. The State admitted into evidence security camera footage showing Beeson and Bedolla taking what Rodriguez identified as the Alpha Key from a cash register.

Rodriguez was advised that Beeson and Bedolla had returned to the store on March 5, 2024. He reviewed more security camera footage after the fact and saw Beeson and Bedolla take some items from the jewelry section and go to the hardware section where Beeson attempted to unlock the anti-theft packaging on the items. Rodriguez identified two items that Beeson and Bedolla had taken from the jewelry section, a lion

3

head pendant and a watch strap. Both items would have been locked in boxes. Rodriguez clarified that Beeson and Bedolla left their cart and left the store without paying for either item. Rodriguez found the opened and empty lock boxes where Beeson and Bedolla had left them on the shelf. He believed from his training and experience that "they used a security device tool to open the locked boxes without, without them damaging the cases." Beeson and Bedolla again left in the same blue vehicle that had been identified earlier.

When Beeson and Bedolla returned to the store on April 1, 2024, Rodriguez recognized and watched them. He saw Beeson eat a Pixie Stix candy and put on a "slap bracelet" from the store. She also picked out a plush toy. Beeson did not try to pay for the Pixie Stix before eating it. Beeson and Bedolla went to pay at a self-checkout station, where Beeson did not pay for the slap bracelet, plush toy, or the Pixie Stix. Rodriguez confronted Beeson and Bedolla in person, who denied that they had unpaid merchandise until Rodriguez started listing the items. At that point, Beeson and Bedolla walked outside and Rodriguez called the police, who arrived before the pair could leave.

Randall Crump, who on April 1, 2024, worked for the Emporia Police Department, testified next. Crump responded to a report that Beeson and Bedolla had committed a theft. Crump stopped Beeson and Bedolla as they were about to leave the parking lot in a blue Ford Focus. During the investigation, Crump found inside the car a "red purse with a Star Wars plushy." In addition to the plushy, Crump found a jersey and some shorts in the vehicle that also had not been paid for. Crump was not able to locate the slap bracelet. Crump conceded he did not see a price tag on the plush toy attached to Beeson's purse.

Martin Orozco, another police officer, testified next. Orozco responded to the theft call on April 1, 2024, and Crump was already there when Orozco arrived. Orozco told Beeson he was there to investigate a theft and asked about the slap bracelet, and Beeson

responded that she did not mean to take it and had forgotten she had it on or in her possession. Beeson did not have the bracelet on her person.

Austin Nelson, another police officer, testified last. Nelson arrived to assist with the theft call, and his role was to contact the store's employees to get their story. He contacted Rodriguez and Joshua Coble, an overnight manager who assisted Rodriguez with his internal investigation. Rodriguez told Nelson about the previous thefts in February and March and about the Alpha Key. Rodriguez showed Nelson security camera footage of Beeson and Bedolla stealing the Alpha Key. Nelson identified Beeson and Bedolla as the persons in the security camera footage. Nelson testified, "We located the blue bracelet that had been taken in the parking lot underneath a car." The pendant, watch strap, and Alpha Key were never found. In addition to the testimony, the State introduced into evidence some of the security camera footage purporting to show the theft and use of the Alpha Key along with photographs from the footage.

The State rested, as did the defense without presenting any evidence. The parties and district court proceeded to a jury instruction conference, where neither party objected to any of the proposed instructions other than the defense's objection to an aiding and abetting instruction. The district court overruled Beeson's objection and agreed that the evidence could support a verdict on that theory. In closing argument, Beeson's counsel argued generally that the State had failed to prove the charges beyond a reasonable doubt. The jury found Beeson guilty as charged.

On November 8, 2024, the district court sentenced Beeson to 8 months' imprisonment with 12 months' postrelease supervision on the felony conviction for unlawful possession of a tool to remove theft detection devices and a concurrent 6 months jail term on the misdemeanor theft conviction. The district court granted probation for 12 months. Beeson timely appealed the district court's judgment.

*Did the district court abuse its discretion by allowing the State to amend the complaint?*

Beeson first claims the district court abused its discretion by allowing the State to amend the complaint on the morning of trial by expanding the dates on which the unlawful possession charge occurred to include from February 4, 2024, to March 5, 2024. The State argues the district court did not err by allowing the State to amend the complaint and that Beeson cannot show prejudice.

Appellate courts review the district court's decision to grant leave to amend a charging document for an abuse of discretion. *State v. Bischoff*, 281 Kan. 195, 205, 131 P.3d 531 (2006). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025). The party claiming an abuse of discretion bears the burden to show it. *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024).

K.S.A. 22-3201(e) provides:  "The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." In assessing prejudice, courts consider whether "(1) the date was a critical issue; (2) the change implicates the statute of limitations; (3) the amendment affects an alibi defense; (4) time was an element of the offense; or (5) there is any surprise to the accused." *State v. White*, 316 Kan. 208, 213-14, 514 P.3d 368 (2022).

Beeson asserts on appeal that the State had ample time to amend the complaint earlier in the prosecution. She claims that she lacked time to adjust her defense to the amended date range but does not explain how her defense would have changed with more notice. Considering the *White* factors, the dates of the charge were not a critical issue, the change did not implicate the statute of limitations, the amendment did not affect an alibi

6

witness, and time was not an element of the offense. The amendment should not have surprised Beeson because the affidavit of probable cause supporting the original complaint alleged that Beeson obtained control over the Alpha Key on February 4, 2024. In fact, it appears the March 5, 2024, date in the original complaint was simply a mistake in the first place. Beeson was aware of the allegations against her and the State's evidence to support the charge. She concedes in her appellate brief that "amending the alleged dates of the offense would not have involved different discovery." Finally, Beeson's trial counsel acknowledged on the record that he and the prosecutor had emailed about the possibility of the amendment the week before trial.

The amended complaint did not charge Beeson with a different crime, and her substantial rights were not prejudiced by allowing the amendment. Beeson fails to show the district court abused its discretion by allowing the State to amend the complaint.

*Did the district court err by failing to properly instruct the jury on the burden of proof relating to permissive inferences?*

Beeson next claims the district court erred by failing to properly instruct the jury on the burden of proof relating to permissive inferences. This claim only affects Beeson's conviction of theft. At trial, the district court instructed the jury: "You may infer that a person intended to permanently deprive the owner of the possession" of property when the person "[w]ithout authority, removed from merchandise a theft detection device prior to the purchase." See K.S.A. 21-5804(a)(7). But the district court failed to include a limiting instruction on burden of proof under K.S.A. 60-416(b)(2). While not requested at trial, Beeson claims the following language should have accompanied the instruction:

> "You may consider (this inference) (these inferences) along with all the other evidence in the case. You may accept or reject the (inference) (inferences) in determining whether the State has met the burden to prove the required criminal intent of the defendant. This burden of proof never shifts to the defendant." PIK Crim. 4th 58.090.

7

The State asserts that Beeson is precluded from bringing this claim under the invited error doctrine. On the merits, the State agrees that the limiting instruction on burden of proof would have been legally and factually appropriate. But the State contends the district court's failure to give the instruction was not clear error.

> "When analyzing jury instructions, appellate courts follow a three-step process: (1) determine whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) consider the merits of the claim to determine whether error occurred below; and (3) assess whether the error requires reversal—in other words, whether the error can be deemed harmless. [Citation omitted.]" *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

"At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record." 320 Kan. at 242. When the issue is whether an instruction should have been given, this court reviews whether the instruction accurately reflects the law. *State v. Buck-Schrag*, 312 Kan. 540, 550, 477 P.3d 1013 (2020). If so, it is legally appropriate. 312 Kan. at 550-51. In determining whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. See *State v. Mendez*, 319 Kan. 718, 727, 559 P.3d 792 (2024).

Beeson acknowledges she did not request the limiting instruction on burden of proof at trial. When a party raises a jury instruction error for the first time on appeal, this court must determine whether the failure to give the instruction was clearly erroneous. K.S.A. 22-3414(3); *State v. Turner*, 318 Kan. 162, 166-67, 542 P.3d 304 (2024). To be clearly erroneous, the instruction must have been legally or factually appropriate and this court must be firmly convinced the jury would have reached a different verdict had the

instruction been given. As the party asserting the error, Beeson has the burden to show both error and prejudice. See *Mendez*, 319 Kan. at 727-28.

We first address the State's assertion that Beeson is precluded from bringing this claim under the invited error doctrine. Beeson did not object to the inference instruction given by the district court, nor did her proposed instruction include a K.S.A. 60-416(b)(2) limiting instruction on burden of proof. But Beeson did not affirmatively argue to the district court that the limiting instruction should not be given. The Kansas Supreme Court has held that the invited error rule does not apply when a party merely accedes to a claimed instructional error at trial, but does not affirmatively invite the trial court to commit the claimed error. *State v. Smith*, 317 Kan. 130, 139, 526 P.3d 1047 (2023). We find Beeson is not precluded from bringing this claim under the invited error doctrine.

Beeson claims a K.S.A. 60-416(b)(2) instruction was legally and factually appropriate because it was statutorily required after the district court gave an inference instruction against her. The State concedes the instruction would have been legally appropriate and makes no argument that the instruction would not have been factually appropriate. We find the instruction would have been factually and legally appropriate where evidence was produced at trial to support the inference instruction, such as Rodriguez' testimony that Beeson removed anti-theft packaging in the store without paying, along with the fact that the inference instruction was given which legally triggered the limiting instruction on burden of proof under K.S.A. 60-416(b)(2).

Although Beeson did not request the K.S.A. 60-416(b)(2) limiting instruction below, she now argues the failure to give the instruction was structural error requiring reversal. Beeson relies on *Sullivan v. Louisiana*, 508 U.S. 275, 279-80, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (holding trial court's jury instruction on reasonable doubt with language previously found to be unconstitutional amounted to structural error). The Kansas Supreme Court also has identified an "erroneous reasonable-doubt instruction" as

9

being within the "'very limited class of cases'" involving structural errors. *State v. Johnson*, 310 Kan. 909, 914, 453 P.3d 281 (2019). There do not appear to be any Kansas appellate cases addressing an instructional error for the failure to give a limiting instruction on burden of proof under K.S.A. 60-416(b)(2). But we are not persuaded by Beeson's argument that the failure to give the instruction is structural error.

Errors are structural when they defy analysis by harmless error standards because they affect the framework within which the trial proceeds. *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991); *Johnson*, 310 Kan. at 913. Beeson is not challenging the language in the general burden of proof/presumption of innocence instruction the district court gave to the jury at her trial in jury instruction No. 6. See K.S.A. 21-5108. Instead, she is claiming error because the district court instructed the jury on a statutory permissive inference without including a limiting instruction on burden of proof under K.S.A. 60-416(b)(2). As we will discuss below, Kansas appellate courts have addressed similar claims for clear error. We conclude this type of claimed error does not affect the framework in which the trial was conducted and is susceptible to harmless error analysis. Thus, the claimed error does not constitute structural error.

Next, Beeson argues the district court's failure to include a limiting instruction on burden of proof under K.S.A. 60-416(b)(2) was clear error. Before applying the clear error standard to the circumstances of Beeson's case, we examine some cases on how Kansas courts review the failure to give similar limiting instructions under other statutes. In *State v. Johnson*, 233 Kan. 981, 983, 666 P.2d 706 (1983), a case in which Johnson was charged with giving worthless checks, the trial court instructed the jury consistent with language in K.S.A. 21-3707 that the making, drawing, issuing, or delivering of any check refused by the drawee on account of insufficient funds "shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds." Our Supreme Court found the language amounted to a rebuttable statutory presumption, in which case "the jury must be clearly instructed as to the nature and extent of the presumption and

10

that it does not shift the burden of proof to the defendant." 233 Kan. at 986. The court found the instruction "could clearly have led the jury to believe that the burden was upon the defendant to overcome the rebuttable presumption of intent to defraud and that upon failure to do so, the presumption was conclusive regardless of other evidence to the contrary." 233 Kan. at 986. Thus, the instruction without the additional language on burden of proof was clearly erroneous. 233 Kan. at 986.

*Johnson* is distinguishable from Beeson's case because it involved a rebuttable statutory presumption, whereas Beeson's jury was instructed only on a permissive inference. In *State v. Alvarez*, 29 Kan. App. 2d 368, 373, 28 P.3d 404 (2001), a case in which Alverez was charged with possession of methamphetamine, the district court instructed the jury that "'[y]ou may infer possession from a person's use of illegal drugs and narcotics, his proximity to the area where the drugs were found, whether the drugs are in plain view, and suspicious behavior.'" Alvarez claimed on appeal that the instruction shifted the burden of proof onto him. This court reviewed for clear error and found none. 29 Kan. App. 2d at 373-74. In doing so, it distinguished the instruction in *Johnson* and found that Alvarez' instruction just told the jury in different words what evidence it could consider to find the possession element beyond a reasonable doubt, and the court implied that nothing in the instruction took away from the State's burden to prove its case beyond a reasonable doubt. *Alvarez*, 29 Kan. App. 2d at 373-74.

We also consider *State v. Crabtree*, 248 Kan. 33, 39-40, 805 P.2d 1 (1991), a case in which Crabtree was charged with second-degree murder and claimed self-defense. The district court instructed the jury on self-defense but failed to include a separate instruction at PIK Crim. 2d 52.08, now at PIK Crim. 4th 51.050, stating in part: "Evidence in support of [defendant's claim of self-defense] should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State's burden of proof does not shift to the defendant." 248 Kan. at 39. The trial court had instructed the jury generally on burden of proof/presumption of innocence at PIK Crim.

11

2d 52.02. *Crabtree*, 248 Kan. at 40. Our Supreme Court found that although the separate instruction at PIK Crim. 2d 52.08 should be given in any case in which the defendant raises an affirmative defense, the district court's failure to give the instruction was not clear error when the district court had given the general instruction on burden of proof/presumption of innocence at PIK Crim. 2d 52.02. 248 Kan. at 40. See also *State v. Cooperwood*, 282 Kan. 572, 582, 147 P.3d 125 (2006) (applying holding in *Crabtree*).

We now apply the clear error standard to the circumstances of Beeson's case. To find clear error, we must be firmly convinced the jury would have reached a different verdict on the theft charge had the limiting instruction on burden of proof under K.S.A. 60-416(b)(2) been given. *Mendez*, 319 Kan. at 727-28. The burden is on Beeson to show error and prejudice. 319 Kan. at 727-28. We begin by looking at other instructions the district court provided to the jury. The district court instructed the jury that it "may" infer a person intended to permanently deprive a property owner of the possession or use of property when the person, without authority, removes a theft detection device from the property. The limiting instruction under K.S.A. 60-416(b)(2) would have advised the jury that it may consider this inference along with all the other evidence in the case. But in a separate instruction, the district court told the jury: "In your fact finding you should consider and weigh everything admitted into evidence."

Likewise, the limiting instruction under K.S.A. 60-416(b)(2) would have advised the jury that it may accept or reject the inference in determining whether the State has met the burden to prove the required criminal intent of the defendant. But in a separate instruction, the district court told the jury: "The State has the burden to prove the defendant is guilty. The defendant is not required to prove that she is not guilty. You must presume that she is not guilty unless you are convinced from the evidence that she is guilty." In other words, much of the language that would have been given in the limiting instruction under K.S.A. 60-416(b)(2) was provided to the jury in other instructions.

12

Turning to the evidence, the record shows that the State presented overwhelming evidence to prove Beeson guilty of theft beyond a reasonable doubt. The evidence showed that Beeson and Bedolla stole an Alpha Key from Wal-Mart on February 4, 2024. They returned on March 5, 2024, where they used the Alpha Key to steal jewelry locked in anti-theft boxes. They returned again on March 25 and April 1, 2024, where they stole several more items and were eventually confronted by store employees. Much of the illegal conduct was recorded on videotape and presented to the jury. Rodriguez, a loss prevention officer for Wal-Mart, testified in detail about the Alpha Key, how it worked, and how Beeson and Bedolla used the Alpha Key to remove items from the store. The permissive inference instruction told the jury it could infer that a person intended to permanently deprive a property owner of the possession or use of property when the person, without authority, removes a theft detection device from property. This is merely a common-sense inference the jury would likely find without an instruction from the court. Moreover, whether Beeson intended to permanently deprive Wal-Mart of the merchandise was not the focus of the trial. Beeson asserted a general denial defense and argued the Stated failed to prove the charges beyond a reasonable doubt.

The district court should have instructed the jury on burden of proof under K.S.A. 60-416(b)(2) to accompany the permissive inference instruction on the element of intent to permanently deprive. Failure to do so was error. But Beeson does not firmly convince us that the jury would have reached a different verdict on the theft charge had the instruction been given. We conclude the district court's failure to properly instruct the jury on the burden of proof relating to permissive inferences was not clearly erroneous.

*Did the district court err by instructing the jury on aiding and abetting?*

Beeson next claims the district court erred by instructing the jury on aiding and abetting. She claims the instruction was not factually appropriate, particularly as it relates to the charge of unlawful possession of a tool to remove theft detection devices, because

13

"there is no evidence that [Beeson] in some way intentionally aided [Bedolla] to commit the crime of possession or advised, hired, counseled, or procured [Bedolla] to commit that crime." The State asserts the aiding and abetting instruction was factually appropriate and, even if it was erroneously given, any error was harmless.

We have set forth the three-step process for an appellate court to analyze jury instructions in the last section of this opinion. The main difference with Beeson's claim about the aiding and abetting instruction is that she timely objected to the district court giving the instruction at trial, so the issue is fully preserved for our review.

The district court instructed the jury on aiding and abetting as follows:

"A person is criminally responsible for a crime committed by another if the person, either before or during its commission, and with the mental culpability required to commit the crime *of theft*: intentionally aids the other person to commit the crime, or advises, hires, counsels, or procures the other person to commit the crime.

"All participants in a crime are equally responsible without regard to the extent of their participation. However, mere association with another person who actually commits the crime [or] mere presence in the vicinity of the crime is insufficient to make a person criminally responsible for the crime." (Emphasis added.)

Beeson does not address whether the instruction was legally appropriate, but she argues the instruction was not factually appropriate. Beeson argues that on February 4, 2024, the evidence showed that she attempted to possess the Alpha Key but was unsuccessful, and then Bedolla actually took possession of the Alpha Key without any assistance from Beeson. Then on March 5, 2024, the evidence showed that Beeson alone possessed and used the Alpha Key. Beeson argues, "[i]n neither case, does the record contain any evidence that [Bedolla] was a principal in the crime of possession of a tool for removal of a theft detection device and [Beeson] aided or abett[ed] him in that possession. As a result, the aiding and abetting instruction was factually inappropriate."

14

We first observe that Beeson argues the aiding and abetting instruction was factually inappropriate "particularly as it relates to the allegation of unlawful possession of a tool to remove theft detection devices." But the district court tailored the aiding and abetting instruction to the theft charge. So Beeson's argument that the instruction was factually inappropriate for the tool possession charge misses the point.

But even if the jury could also consider the aiding and abetting instruction for the tool possession charge, Beeson's argument would fail. An instruction on aiding and abetting is factually appropriate when a defendant "willfully and knowingly associate[s] himself with the unlawful venture and willfully participate[s] in it as he would in something he wishes to bring about or to make succeed." *State v. Betancourt*, 299 Kan. 131, 134, 322 P.3d 353 (2014). "The fact that [a] defendant was charged as a principal does not make an aiding and abetting instruction improper; one who counsels, aids or abets in the commission of an offense may be charged, tried and convicted as a principal." *State v. Singleton*, 223 Kan. 559, 562, 575 P.2d 540 (1978).

To whatever extent Beeson claims the aiding and abetting instruction was improper because Beeson was charged as a principal, she is incorrect under the rule in *Singleton*. 223 Kan. at 562. An aiding and abetting instruction is factually appropriate whenever the evidence shows that one person intentionally aids another person to commit a crime with the intent to commit the crime. The evidence showed that Beeson and Bedolla were partners in crime and that Beeson intentionally aided Bedolla to commit the crimes of theft and possession of a tool to remove theft detection devices, with the intent to commit both crimes. The jury instruction on aiding and abetting was factually appropriate and the district court did not err by giving the instruction.

*Was there sufficient evidence to support the conviction of unlawful possession of a tool to remove theft detection devices?*

Finally, Beeson claims there was insufficient evidence to support the conviction of unlawful possession of a tool to remove theft detection devices. Beeson argues that "[a]lthough the [S]tate presented evidence that [Beeson] took merchandise *from* a theft detection device, the record contains no evidence that [Beeson] took or intended to take a theft detection device *from* merchandise." The State argues there was sufficient evidence to support the conviction.

> "'When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.' [Citations omitted.]" *Mendez*, 319 Kan. at 723.

Beeson's reasoning on the insufficiency of the evidence claim is difficult to follow, but it suffers from at least one flaw. Beeson was not charged with *taking* a theft detection device from merchandise or with *taking* merchandise from a theft detection device. She is charged with unlawful *possession* of a tool to remove theft detection devices. Whether Beeson took merchandise *from* a theft detection device or whether she took a theft detection device *from* merchandise is not an element of the crime.

The State charged Beeson under K.S.A. 21-5805(c), which provides it is unlawful to, "possess any tool or device designed to allow the removal of any theft detection device from any merchandise with the intent to use such tool to remove any theft detection device from any merchandise without the permission of the merchant or person owning or holding such merchandise." To establish this charge, the State needed to prove: (1) Beeson possessed a tool designed to allow the removal of a theft detection

16

device from the merchandise, and (2) Beeson intended to use the tool to remove a theft detection device from merchandise without permission of the merchant.

The State presented evidence, viewed in the light most favorable to the State, that Beeson and Bedolla worked together to unlawfully possess an Alpha Key designed to allow the removal of theft detection devices from merchandise at the Wal-Mart. The State also presented evidence, viewed in the light most favorable to the State, that Beeson and Bedolla returned to the Wal-Mart on later occasions with the intent to use the Alpha Key to remove theft detection devices from merchandise without permission of Wal-Mart. We find the State presented sufficient evidence, viewed in the light most favorable to the State, for the jury to find Beeson guilty beyond a reasonable doubt of unlawful possession of a tool to remove theft detection devices.

Affirmed.